UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-169-GWU

SUSAN KAY COOTS,                                                   PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

**INTRODUCTION**

Susan Coots brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits (DIB)

and for Supplemental Security Income (SSI).  The case is before the court on cross-

motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

  1.    Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

  2.    Does the claimant have any medically determinable physical
        or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

  3.    Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to

1

07-169  Coots

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20  C.F.R.  Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

07-169  Coots

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-169  Coots

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ."  Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Coots, a 37-year-old former court clerk and legal secretary with a high school education, suffered from impairments related to mild chronic obstructive pulmonary disease, a generalized anxiety disorder, and a depressive disorder.  (Tr. 18, 24).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 26).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 26-27).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 25).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included such non-exertional limitations as (1) an inability to ever climb; (2) a need to avoid exposure to heights and dangerous or moving machinery; (3) a need to avoid exposure to dust, smoke, fumes, chemicals, gases, temperature extremes, or humidity extremes; and (4) an inability to perform fast-paced work requiring frequent contact with the public or co-workers.  (Tr. 795).  In response, the witness identified a significant number of jobs in the national economy which could still be performed at the medium, light and sedentary levels.  (Tr. 795-796).  Therefore, assuming that the vocational factors considered by Ellis fairly depicted Coots's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  The only physical restriction imposed upon Coots by Dr. Arif Bari, a treating physician, was the need for a smoke-free environment.  (Tr. 386).  The hypothetical question was consistent with this opinion. Dr. Bari treated the plaintiff at Appalachian Regional Healthcare during the time period relevant to this appeal.[1]  Despite diagnosing such physical impairments as asthma, moderate obesity, intermittent low back pain, and benign essential tremor,

---

[1] The plaintiff alleged an onset date of March 22, 2003 on her DIB application.  (Tr. 49).

more severe physical restrictions were never imposed by Dr. Bari or other Appalachian staff members. (Tr. 386-497, 687-692). A March, 2003 chest x-ray was normal. (Tr. 484).

Coots was treated on several occasions at the Bon Secours St. Mary's Hospital by Dr. Sreenivasan Kotay following a leg injury. (Tr. 298-351, 366-379, 514-593). In February of 2003, the plaintiff was noted to be in otherwise good health with the exception of bronchial asthma. (Tr. 298). The plaintiff was noted to have suffered fractures of the left tibia and fibula. (Tr. 300). Dr. Kotay performed a closed intramedullary nailing and fixation. (Id.). In April of 2003, Dr. Kotay removed the distal screws. (Tr. 366). An x-ray revealed healing of the fractures. (Tr. 367). She was noted have no major problems. (Tr. 366). The plaintiff was released to return to work with a restriction that she should not climb stairs for four to six months. (Tr. 537). The claimant returned to Dr. Kotay in December of 2003, complaining about leg pain. (Tr. 535). An x-ray revealed healed fractures and good alignment. (Id.). A physical examination revealed normal motor function. (Id.). The doctor indicated that her pain complaints were normal and would improve with time. (Id.). More severe long-term physical restrictions than those found by the ALJ were never imposed.

In August of 2003, Coots underwent a CT Scan of the chest at Hazard Radiology. This revealed no abnormality with the exception of fatty infiltration in the

07-169  Coots

liver.  (Tr. 382).  The fatty liver was noted by the staff of the Mountain After Hours Clinic but no functional limitations were imposed.  (Tr. 383-385).

In September of 2003, Coots underwent pulmonary function testing at Norton Community Hospital.  The testing revealed mild airways obstructive disease with moderate small airways disease.  (Tr. 498-500).  Dr. Michael Baron reported that while the patient did not respond to bronchodilator on this occasion, this did not mean a trial of bronchodilators should not be attempted.  (Tr. 498).  More severe physical limitations than those found by the ALJ were not imposed.

Coots was examined by Dr. Mohammad Bhatti of the Lee Regional Medical Center in March of 2004.  Motor examination revealed normal bulk and tone.  (Tr. 501).  Strength was intact in all limbs.  (Id.).  Although inconsistent from time to time, sensory examination revealed decreased pinprick sensation over the face, arms and legs.  (Id.).  Mild tremor was observed in the hands.  (Id.).  Benign essential tremor, anxiety, depression, and a demyelinating disorder of the brain were diagnosed and Dr. Bhatti did not rule out multiple sclerosis.  (Id.).  However, again, more severe physical restrictions than those found by the ALJ were not imposed.  (Tr. 501-502).

In May of 2004, Coots underwent a polysomnogram at Medias, Inc.  (Tr. 509-513).  The study revealed no significant respiratory events.  (Tr. 511).  More severe physical restrictions than those found by the ALJ were not imposed.

10

07-169  Coots

Following episodes of syncope and nausea, Coots underwent a medical work-up at the Wellmont-Holston Valley Medical Center in November of 2004.  A stress test was normal.  (Tr. 694).  Syncope was diagnosed.  (Tr. 706).  However, more severe physical restrictions than those included in the hypothetical question were not identified.

Coots was evaluated in November and December of 2004 at Cardiovascular Associates.  Monitoring revealed sinus tachycardia.  (Tr. 710).  A Cardiolite stress study did not reveal any sign of ischemia.  (Tr. 713).  Functional restrictions were not assessed.  (Tr. 710-715).

Coots began treatment in March of 2005 with Dr. Mousab Almusaddy.  Dr. Almusaddy reported that a chest x-ray he reviewed showed no acute infiltrate.  (Tr. 717).  Diagnoses of chronic obstructive pulmonary disease, asthma, allergic rhinitis, probable obstructive sleep apnea, and gastroesophageal reflux disease were indicated.  (Id.).  However, more severe functional limitations than those found by the ALJ were not imposed.

Dr. David Swan (Tr. 642) and Dr. Jorge Baez-Garcia (Tr. 658) reviewed the record and each opined that Coots's physical impairments appeared to be "less than severe."  These opinions also do not suggest the existence of more severe physical problems than were found by the ALJ.  Therefore, these reports provide substantial evidence to support the administrative decision.

11

The ALJ also dealt properly with the evidence of record relating to Coots's mental condition.  The plaintiff sought treatment for her mental problems at the Cumberland River Comprehensive Care Center.  She was diagnosed as suffering from an anxiety disorder.  (Tr. 614).  The claimant's ability  was rated to be "moderately low" in societal/role functioning and "slightly low" in interpersonal functioning.  (Tr. 601).  The mental factors of the hypothetical question were essentially consistent with these limitations.

Dr. Kevin Eggerman examined Coots and diagnosed a generalized anxiety disorder and a depressive disorder.  (Tr. 506).  Dr. Eggerman opined that the claimant would be "moderately" limited in responding to work pressures and "mildly" limited in handling detailed instructions, interacting with others, and responding to changes in the work setting.  (Tr. 507).  The mental factors of the hypothetical question were also essentially compatible with these restrictions.

Finally, the record was reviewed by Psychologists Thompson Prout (Tr. 643-657) and Ilze Sillers (Tr. 660-674), the non-examining medical reviewers.  Neither reviewer thought that the mental problems of Coots constituted a "severe" mental impairment.  (Tr. 643, 660).  Thus, these opinions also do not support the plaintiff's claim.

Coots argues that the ALJ erred in failing to give proper weight to the opinions of Dr. Kadarnath Boodram and her other treating physicians.  However, as

12

previously noted, no treating or examining physician identified the existence of more severe physical or mental restrictions than those found by the ALJ.  Therefore, the court must reject the plaintiff's argument.

Coots asserts that the ALJ placed too much emphasis on her daily activities. However, the medical record failed to establish the existence of more severe functional limitations than those found by the ALJ.  The plaintiff notes she had a number of diagnosed conditions, including chronic obstructive pulmonary disease, sinus tachycardia and syncope.  However, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Therefore, the court rejects the claimant's argument.

Coots submitted several additional medical records directly to the court which were not seen by the ALJ.  This action raises an issue concerning a remand for the taking of new evidence before the Commissioner.  A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. Section 405(g).  The party seeking remand bears the burden of showing that a remand is proper under the statute.  Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986).  The statute provides that a claimant

07-169  Coots

must prove that the additional evidence is both material and that good cause existed for its not having been submitted at an earlier proceeding.  <u>Sizemore v. Secretary of Health and Human Services</u>, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  <u>Sizemore</u>, 865 F.2d at 711.  Thus, the new evidence must be "material" and "good cause" must be shown why it was not previously submitted.

The medical records with which Coots seeks a remand of the action consists of treatment notes from Dr. Bhatti and Cumberland River dated mainly after the ALJ's final decision of November 22, 2005.  The plaintiff has offered no explanation as to why such or similar evidence was not obtained prior to the issuance of the ALJ's final decision.  While the records were not in existence at the time of this decision, such, by itself, does not satisfy the good cause test and a valid reason for failure to obtain the evidence must still be shown.  <u>Oliver</u>, 804 F.2d at 966.  Furthermore, the new evidence does not identify the existence of more severe functional limitations than those found by the ALJ and, so, would not be "material."  Therefore, the claimant has failed to meet either the "good cause" or "materiality" requirements and a remand for the taking of new evidence is not appropriate.

14

07-169  Coots

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 11th day of March, 2008.

**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**